Mr. Lindstrom, good morning. Good morning, Anne. Can you sort of step away from the receiver? Sure. Mr. Lindstrom, can you just say something so... Yes, Your Honor. Can you hear me now? No. It's all garbled. Are you on a speakerphone? I am not on a speakerphone, Your Honor. Okay. Well, that's better. All right. Would you please proceed with your opening statement then? Yes, Your Honor. Thank you. Aaron Lindstrom on behalf of Advanced Pierre Foods. I've asked two issues this morning. The Board's imposition of a read-aloud remedy and the Board's treatment of non-coercive speech as an unfair labor practice. On the first, the Board imposed an extraordinary remedy without explaining why traditional remedies would be insufficient. That approach is not just an abuse of discretion. It's also arbitrary and capricious under State which requires that agencies do not fail to consider an important aspect of the problem. That's an attack on the reasoning of the Board, correct? Yes. It's a failure to explain. Failure to explain, but you never presented to the Board the claim that the order on which you seek review was inadequately reasoned. Yes, Your Honor. There was no motion for reconsideration, but our argument here is that when an agency is acting in excess of its authority, as the U.S. Supreme Court explained in Detroit Edison, then in that instance, 160E is no bar to this Court considering it. And when an agency acts arbitrarily and capriciously, that is a violation of its statutory authority. It violates the APA, and therefore, it's in excess. And I think the City of Arlington case shows that there's no distinction between some jurisdictional statutory limitations and other statutory limitations that might be thought to be non-jurisdictional for agencies. All limits on statutory authority are limits that mean the agency is acting ultra vires, to use the Supreme Court's words in the City of Arlington, when it exceeds those limits. And I think in this case, it's also something that's important that it's not just us invoking the Court's jurisdiction. This is also a case where the Board is asking this Court to enforce the order. And so this Court needs to determine, as the U.S. Supreme Court explained in NLRB versus Cheney-Lumber, needs to consider whether the order that this Court would be enforcing is a lawful order or not. So in this case, I think both the merits of the arbitrary and capricious argument about the read-aloud remedy and the jurisdictional point, they both overlap and are the same point, essentially, that when an agency fails to consider a key factor, that means it's acting arbitrarily and capriciously. And so that means it's acting outside of statutory authority and it's ultra vires. And therefore, it's co-conclusive destruction and something that this Court has jurisdiction to consider. Doesn't that make any kind of garden-variety arbitrary and capricious argument then outside the ambit of Section 10e, if we were to accept your argument? And doesn't that, in effect, really undermine Congress' intent when it drafted Section 10e? I don't think it undermines Congress' intent, Your Honor. It would still preclude parties from raising arguments they hadn't objected to that go to lots of other issues, questions of fact, applying standards to facts, applying judicial precedence. But I think Congress would have thought that it's an extraordinary circumstance, for example, if an agency is acting outside of statutory authority. Why are those any less fundamental? I mean, on your reasoning, just as an agency lacks authority to enforce an unreasoned decision, it also lacks authority to enforce a decision that is unsupported by I think, Your Honor, the difference is there may be some questions of fact that go beyond the substantial evidence. There may be other issues where there's still a question of fact that's in dispute. I guess I have to acknowledge that this is an argument that takes statutory limits like those found in the statute, and those are limits that Congress imposed on all agencies. And when an agency, I mean, I think that's what the city of Arlington says very clearly, that whenever an agency steps beyond the bounds of its authority, whether both in how it's acting and in its authority to act, it's essentially the same question. And so in both instances, they're acting ultra vires. So, for example, in the city of Arlington, the Supreme Court said both an agency's power to act and how they act is authoritatively described by Congress, so that when they act improperly, no less than when they act beyond their jurisdiction, what they do is ultra vires. And the court also said that there's no difference, as far as ability of agency action is concerned, between an agency's exceeding the scope of its authority, its jurisdiction, and succeeding authorized application of authority that it unquestionably has. So both the application of authority and the things you might think of as jurisdictional in both instances, it goes to the agency's power to act because they're different from courts. They don't have power under the Constitution. All of their power comes from the statutes of the government. Suppose I disagree with you on preservation of the claim that the order was unreasoned. Is there any other argument you have with regard to the remedy? Yes, John. I mean, you frame this, there's this second strand of argument you make that the board abused its discretion, and I can't quite tell whether that's a freestanding argument about the evidence, which might be preserved, or sometimes you articulate it as just an argument for reversal without remand, assuming that the explanation is no good. So I think even if you disagree with me about this preservation issue, we could still prevail on that second part, that's abuse of discretion on these facts, where there's no high-level manager involved, there's no history, the acts are not, the violations were not egregious, and then the fact that they didn't provide any persuasive explanation for what the traditional, why traditional remedies would be insufficient. So I think I tied them together because I think the first point is important as well, but there is a separate argument, abuse of discretion, just considering this as a whole on the facts of this case, that it wasn't foreclosed from arguing that Ramirez was not a high-level manager because you did not make that argument anywhere in your exceptions or responses to the general counsel's exceptions below. What's your response to that? Our response to that, Your Honor, is that that type of, that's kind of going beyond what this Court has required to preserve an issue. To make, to preserve an issue, it just has to put the Board on notice, and when we put the Board on notice that we're challenging the remedy because the factors don't total up to it, that puts them on notice that we're going to be arguing about the individual factors, I think. This Court has said that it's, 160 is not supposed to be the arguments that are made, and that's sufficient. I think an argument about one sub-factor isn't necessarily implied when we're challenging the results of combining those factors as a whole. So if there's a five-factor test and you file exceptions that say that these facts don't meet the standard of the test without articulating which, if any, of the five factors aren't met, you believe that's sufficient to allow you to later challenge any of the five factors as being present if the Board finds all of them to be present in their decision, and there's no motion for reconsideration that's filed. I think, Your Honor, I guess yes. I mean, it's a totality of the circumstances type analysis, and here, I mean, in one... Can I continue to respond, Your Honor? Go ahead. Thank you. And in particular here, particularly where the ALJ specifically said that she distinguished her from upper management by saying that she had to report to upper management, I think that is another reason that it's something that was fair to bring up now. I don't know if I've lost my rebuttal time or if I can turn to the 158C issue. All right. But you're over your time, so can you do it quickly? I guess for 158C, I just think I'd like to point out the Board has not made any statutory interpretation response to the fact that the statement itself must contain the threats, and they're pointing purely at upper management. Could we start with preservation? Where did you make that argument to the agency? That's a frontal attack on the MOHAWK framework. The way you articulated the point before the agency was that the MOHAWK test wasn't met because the ULPs were less pervasive and so on. So, Your Honor, at the time of the answering brief where we cited the statute and said that the employer's speech was protected. So, for example, we said that all of the speech was fully permissible under the Act and solidly within Section 8C and get felt backing. We referred to the fact that the communications didn't contain a threat or a promise. We know that the employers have a right. You cited 8C for the uncontested proposition that speech is protected if it's not misleading. But you didn't really engage on this crucial point about I'm sorry, not threatening. You didn't really engage on this crucial point about whether you assess the threatening nature of the speech within the four corners of the speech or whether you can make neutral speech threatening just by reference to other ULPs. Well, Your Honor, I think going back to what Section 160E says in our obligation, our obligation is to present an objection to the board. And it seems to me that by saying the board is violating a statute, that is presenting in a specific statute 158C to protect the employer's right to speech. And that's the binding law, not the board precedent. And so, we're relying on the statute that Congress wrote that grants us our rights and protects our rights. So, the fact that the board put a gloss on it, I don't think that means we didn't preserve our argument that the statute is what matters and has to be followed. It's a necessary part of the analysis to look at what the statute says. And if the board precedent has departed. Thank you, Your Honor. All right. If there are no more questions, then Mr. Lindstrom will give you a couple minutes in reply. Mr. Hickson. Yes. Good morning, Your Honors. May it please the Court, Michael Hickson for the NLRB. Substantial evidence supports the sole disputed finding of a violation here and the board acted well within its broad remedial discretion in ordering a notice reading to remedy that violation, as well as the 16 additional violations that are undisputed before the Court. I guess I would turn to the Section 10e issues that have been discussed as they've been a focus of conversation thus far. In terms of the company's attack on the sufficiency of the board's explanation, the company concedes that it did not raise that argument before the board. It says in its reply brief that its failure should be excused. Because it knew when it filed its opening brief that it had not raised this argument to the board, it should have made this excuse contention in its opening brief. Since it waited until the reply, we've not had a chance to respond, but the argument is meritless, we maintain. This court, in fact, has consistently held many times in reviewing NLRB orders specifically that employers' arguments that the board failed to adequately explain a remedy or failed to consider a factor in ordering a remedy are jurisdictionally barred by Section 10e because the employer never raised those Some of them are cited for this point, some are not. But, for example, the Veritas decision, the Pacific Post Supply decision, the Fallbrook Hospital decision, the Parkwood Developmental Center decision, and the Traction Wholesale decision are all examples of cases where this court has rejected as jurisdictionally barred arguments that the board failed to explain a remedy or failed to consider a factor in determining a remedy. That seems right to me, but what about the second strand of their argument that just focuses on, they just say, regardless of the explanation, they say it would not be defensible to impose that remedy on this record, which is essentially the point they did make to the board. Why can't they make that argument here? Your Honor, I could see, we have not, we did not contend in our briefs that they are jurisdictionally barred from arguing that the record does not warrant the remedy. Honestly, I could see an argument that the board did not find, and the board also relied in ordering the remedy on Ms. Ramirez's high-level status and her pervasive involvement in the ULPs, which the judge also did not consider in making the recommendation against the remedy. So, I could see an argument that because of that, that they're also jurisdictionally barred on that strain, although we did not find that the board simply did not abuse what this court has recognized as its extraordinarily wide discretion in finding that the violations were sufficiently serious and widespread to merit a notice reading. I'm sorry, Your Honor, did someone ask me a question? Yes, so just on the merits of that point, look, if we're just deep in the weeds of the NLRA and you get discretion as to fact-finding, you get discretion as to remedial choice, all of that's fine. You're obviously in a very strong position. But why shouldn't we think of this case, think of that question as not having at least a First Amendment overlay to it, and even the NLRA cases describe it as an extraordinary remedy and not take lightly when you want to compel speech or compel association with speech rather than just informing the employees yourselves of your ruling? Your Honor, if I understand, I'm understanding your question to mean a First Amendment concern in terms of an employer representative reading the remedy. Okay, sure. So I guess a couple of responses. First, the employer, I think, has waived any such contention because they've never raised that to this Court. They've said they make their H.C. and First Amendment argument with respect to the merits of the solicitation of revocation cards argument as to that sole individual finding of a violation. But as to the remedy, that argument is waived. The employer has never said that First Amendment concerns should inform the Court's determination of whether to enforce the notice-reading remedy. But aside from that, this Court has repeatedly enforced this remedy for the past 30-plus years. It recognized, for example... We have, but I didn't see in any of the cases consideration of a First Amendment issue. And I did see a lot of commentary from Judge Williams, Judge Ruth Ginsburg, and so on, making points that under current First Amendment compelled speech law would seem to support a pretty good case. Well, I guess, yeah, Your Honor, as you pointed out, there are older decisions in which some judges have raised concerns about what they see as a level of embarrassment involved on the part of the reader of the notice. And I do think that their discussion, as you say, could be read to kind of relate to or tie to some So, notwithstanding that commentary by those judges in past decisions, for 30-plus years, the Court, with the knowledge of its prior precedent, has repeatedly enforced this remedy. And it has recognized that this remedy can serve to dissipate or to relieve a coercive or intimidating atmosphere created by the employer's This remedy can properly allow the employees to perceive that their employer, their managers, are bound by the requirements of the Act and assure the employees of their rights under the Act. So this Court has repeatedly recognized the proper remedial purpose of the notice reading requirement under Section 10C and notwithstanding the prior commentary that, as mentioned, has continued to uphold this remedy. And again, I would just urge that, on top of all that, that the employer has never raised this to the Court. I got it. Thanks. Thank you, Your Honor. The Board did act well within its extraordinary remedial discretion in light of the company's sustained and varied campaign of unlawful conduct, establishing 17 distinct violations of Section 8A3 and Section 8A1. Could you just address the issue of Ramirez as the high-level manager and the response by your friend on the other side that it would be a hyper-technical requirement for them to have raised that in their exceptions below when they made clear that they did not believe that the circumstances warranted the notice reading remedy? Yes, Your Honor. Thank you for the question. I'd love to clarify that point. Their contention is meritless, and the argument is jurisdictionally barred because the only thing that the company can point to is the answering brief that it filed in response to the General Counsel's exceptions to the ALJ's decision. But the ALJ's decision did not discuss Ms. Ramirez's high-level status. The ALJ did not consider or discuss anywhere in his discussion of the remedy anything about Ms. Ramirez's high-level status or about the involvement of high-level managers in the unfair labor practices. When it filed its exceptions and it said that the circumstances did not warrant the remedy, what it was talking about, if you read its answering brief, is just the nature of the violation. It basically was saying, we agree with the judge. Well, the judge, as I just noted, the judge did not say anything about the involvement of high-level managers or about Ms. Ramirez's high-level status. So it had an opportunity then to bring up the... that Ms. Ramirez is not a high-level manager, and that was one of the reasons that it had given. And the exception said, in Advance Pierre's exception, said the exact same thing. Would the issue be preserved? Yes. If the judge said, if the judge in deciding not to recommend the remedy said Ramirez was not high-level, and then Advance Pierre said, in the answering brief to the GC's exceptions, that we agree with the judge Ramirez was not high-level, then yes, that issue, in my view, would have been adequately preserved. I think I may be over your time, Your Honor, although I frankly lost count of which time we're on. Well, we're on the ten-minute time, but are there any more questions? No, I don't have any more. All right. Okay, then. Let's give Mr. Lindstrom two minutes in reply. Thank you, Your Honor. Focusing on the second strand that Judge Katz was asking about, or arguments, even under that strand, the Skomas case, for example, says that there should be no deference to the reasoning of the board if it doesn't explain, if it fails to consider the relevant factors. And so there's less reason for deference here to their weighing of these factors when they didn't consider why traditional remedies were not appropriate or not necessary. Also, in our brief, with regard to whether or not the read-aloud remedy is an extraordinary remedy, I think we tie that into First Amendment concepts, because the reason it's an extraordinary remedy is because the person in this court was concerned about it. So I remember this court has said that the public confession of sins is something you'd expect in a regime by Fallon or Mao. So there's been criticism of this extraordinary remedy, particularly because of the underlying First Amendment issues it relates to. As for Ramirez, there's been no fact-finding. She's a higher-level manager. There's certainly no fact-finding in the ALJ decision. It says on JA-71, she did not wait to bring back the attention of upper management, which seems to be contrasting her and ALJ's eyes with upper management. And if you look at the findings of the board that are on footnote 4 and the surrounding pages of its opinion, it doesn't make any fact-finding about her And so I think that's another reason why it was an abuse of discretion on these facts to Isn't that another reason why you should have filed a motion for reconsideration? Your Honor, I guess, first of all, we weren't countful at the time. It would have been better, but I think that the objections that have been raised to this extraordinary remedy are sufficient to include the components that make up the manufacturers that necessarily go into it. All right. Any more questions? All right. Thank you, counsel. And Madam Clerk, would you please call the next case?
judges: Henderson, Wilkins, Katsas